PAYNE ET AL. *v.* GROSSART, AUDITOR.

[No. 26,374. Filed June 14, 1934. Rehearing denied October 8, 1934.]

*Martin M. Hugg* and *Cox, Conder, Bain & Cox,* for appellants.

*Charles B. Clarke, Edward H. Knight, James E. Deery, Albert Baker, H. Nathan Swaim, Walter Myers, J. J. Daniels,* and *G. R. Redding,* for appellees.

ROLL, J.—This action was commenced in the circuit court of Marion county, Indiana, by four taxpayers, owning real and personal property in two certain townships (Center and Washington) in Marion county, against the auditor, the treasurer, the members of the Marion county board of tax adjustment, the city of Indianapolis, the school city of Indianapolis, and the board of commissioners of Marion county, to set aside the total levies made by the said tax adjustment board in excess of $1.50 per $100 of assessed value for 1933, and to enjoin the auditor from delivering to the treasurer tax duplicates including total levies in excess of the $1.50 rate, the rate limited by an act of the special session of the General Assembly of 1932, Acts 1932, page 17; and to enjoin the treasurer from demanding, receiving, or collecting anything in excess of the $1.50 total authorized levy, and enjoining the treasurer from declaring delinquent for non-payment of taxes and from selling the same for delinquent taxes because of refusal

of appellant and other taxpayers similarly situated, under and pursuant to the order of said board attempting to fix a total levy above $1.50 per $100, of taxable property; and asking that the members of the board of tax adjustment be directed to reconvene and revise, change and reduce said total levy to at least $1.50 per $100 of taxable property and allocate the said levy among the several taxing units entitled to receive taxes on property within said two townships. Appellants contend that this action is a direct attack by appellants for themselves and all taxpayers in said two townships similarly situated, to set aside as null and void the order as far as it fixes a total levy in excess of the $1.50 rate fixed by said statute of 1932, and the theory of the action is that the said order is, as to such excess, void because of legal or constructive fraud as shown by the facts alleged in the several paragraphs of complaint and because said levy was void for want of power and jurisdiction in said board to make a levy in excess of the rate fixed by the statute.

The issues below were issues of law arising on each of four paragraphs of complaint. To the first and second paragraphs of appellants' second amended complaint the defendants addressed motions to require plaintiffs to make more definite and certain one portion of each. These motions were sustained by the court, to which ruling plaintiffs excepted and refused to plead further. To the third and fourth paragraphs of the second amended complaint, the defendants filed demurrers for want of sufficient facts and the court sustained each of said demurrers, to which ruling plaintiffs excepted. Upon orders to plead over, plaintiffs refused and elected to stand upon the sufficiency of each paragraph. The court thereupon entered a finding and judgment for the defendants and against the plaintiffs, and plaintiffs appealed.

The first question presented is whether or not the court erred in ordering appellants to make these two paragraphs more definite and certain.

We will first consider the court's ruling upon appellees' motion to make the first and second paragraph more definite and certain. This motion was directed to the following paragraph found in the first and second paragraph of appellants' second amended complaint but not found (in exact language) in the third or fourth paragraph thereof. This paragraph reads as follows:

> "That said Board of Tax Adjustment then well knew that no emergency existed in any of said taxing units to justify the passage of said resolution and alleged finding purporting to fix the tax levy for the said year 1932, payable in 1933 in excess of $1.50 . . ."

The fourth paragraph of appellants' second amended complaint is identical with the second paragraph thereof with the above quotation omitted.

We find it difficult upon a careful reading of each of the four paragraphs of appellants' second amended complaint to point out any substantial difference. While we do not find the exact words in the third or fourth paragraphs as that above quoted from the first and second paragraphs, yet we do find language just as direct and specific in each of the four paragraphs as the language to which the motion was directed. We quote the following, found in each paragraph of the complaint:

> "And that said resolution and purported finding was not passed by said Board to deal with or meet any unforeseen occurrence or combination of circumstances which called for or demanded immediate action or remedy, or for which there was any pressing necessity or exigency, for either or any of said several taxing units, nor did the budgets of said several taxing units or either of them include, nor did said levy include, any item of said budgets

or any appropriation for any such unforseen occurrence or combination of circumstances which called for or demanded immediate action or remedy or for which there was any pressing necessity or exigency, and *that said resolution and alleged finding was passed with knowledge on the part of said Board and its members that no such emergency did exist,* and that no evidence was introduced purporting to show any such emergency whatever had been introduced before said Board, and that said Board from the examination made by its members of the several budgets of said taxing units presented to it by the respective officers of said Board knew that no appropriation was asked for by either of them nor was contained in either of said budgets so presented, examined and passed upon by said Board for or on account of any emergency whatever, or for any use having any emergency character, feature or element, *and knew from such examination that no such emergency did then and there exist in either or any of them requiring or justifying said purported finding of any such emergency, requiring said levy in excess of $1.50, including said State tax levy."* . (Our italics.)

In this language we find just as strong and specific allegations of knowledge on the part of the members of the tax adjustment board, that no emergency did exist in *either or any one* of the taxing units to justify the purported finding. Appellees' in their brief pointed out the first part of the above last quoted language, but appellants' in their reply brief contends that the language pointed out by appellee is not identical with the language to which appellees' motion was directed, in that it does not use language referring to the *separate* taxing units.

Appellees' contend that this distinction is important because, (quoting from appellants' reply brief page 8) "in the nature of things any tangible thing which we can conceive of as an 'emergency' must, we think, be an emergency in some one *particular* unit."

This seems to be the only difference pointed out by

appellants' in the meaning of the two quotations. When we read the latter part of the language above quoted as found in each of the paragraphs we find that appellants' objections are fully rebutted, as there is a specific allegation that the members of the tax board *"knew . . . that no such emergency did then and there exist in either or any of them . . ."* Inasmuch as each paragraph of appellants' second amended complaint contained the above allegations, identical in meaning with the challenged paragraph, appellants' suffered no substantial prejudice by the court's ruling. Unless substantial injury is shown to have resulted from such a ruling the courts will not reverse the decision of the lower court.

It was said in the case of *Haskell and Barker Car Company* v. *Trzop* (1920), 190 Ind. 35, 128 N. E. 401, concerning motions to make pleadings more specific and certain, that:

> "In view of our present rule as to the value of pleaded conclusions, more attention should be given such motions by trial courts than formerly, but still the question of granting or refusing such motions is largely within the discretion of *nisi prius* courts, and their action on appeal will be upheld unless it appears that the complaining party has suffered from such ruling." (See cases cited on p. 41.)

Appellants have wholly failed in their efforts to point out or show to this court wherein they have suffered any substantial injury whatever.

Appellants' further contend, in their effort to show reversible error in sustaining appellees' motion to make more specific and certain, cite, and rely upon the case of *Neil* v. *Turner* (1919), 77 Ind. App. 78, 125 N. E. 228. We have no criticism to offer to the law announced in that case, but we are unable to see how our holding in the present case is in conflict with the law as there announced. In the *Neil* v. *Turner* case, property owners

in the city of Terre Haute sought to set aside a certain assessment roll for the improvement of a certain street in said city and to enjoin the collection and the enforcement of the same. The complaint is not set out in full, but certain averments are set out. There was a motion filed by defendants to make the complaint more specific, by setting out the acts and facts constituting the fraud complained of in accepting said work as completed, and in approving of said assessment roll. In passing upon the correctness of the court's ruling in denying the motion the court quotes from *Alsmeier* v. *Adams* (1914), 62 Ind. App. 219, 105 N. E. 1033, as follows:

> "While fraud in terms is not charged in the complaint, the facts averred show a radical and apparently inexcusible departure from the kind of sewer specified in the contract; materially defective work in the actual construction; . . . and an arbitrary acceptance of the work by the board with full knowledge of all the facts and for the express purpose of relieving the contractor. Such facts, with others pleaded, are sufficient to constitute a charge of constructive fraud or fraud in law. It is only in proceedings to which §21 of our statute of frauds (being §7483 Burns 1914, §4924 R. S. 1881) is applicable that fraud or fraudulent intent must be directly averred as a fact."

Positive fraud was not charged but facts were alleged which constituted constructive fraud, or fraud in law, which, we think all would agree, was sufficient. As stated above we find it difficult to follow appellants' reasoning in applying the above quotation to the facts in this case, and to say that upon authority of this case, the court committed reversible error in sustaining appellees' motion to make the first and second paragraph of complaint more specific and certain. The Neil-Turner case differs in so many respects to the case at bar that we do not deem it necessary to point out the reasons why it cannot be considered as authority for appellants' contention. We conclude that the trial court did not

commit reversible error in sustaining appellees' motion to make appellants' first and second paragraph more specific.

The next question arises upon the sufficiency of appellants' third and fourth paragraphs of their second amended complaint. The fourth paragraph is set out in full in appellants' brief and fills about twenty-one pages and is entirely too lengthy to be set out in this opinion. The third paragraph is identical with the fourth paragraph except the third omits certain allegations with reference to the five members of the tax adjustment board who voted for the recorded levy in excess of $1.50 to the effect that before their decision was made they determined that they had the right and power to construe the word "emergency" as used in the 1932 statute to be the mere appearance of a difference between $1.35, the maximum lawful rate after deducting the 15 cents mentioned in §1 of said 1932 act, and a total sum composed of the sums required for the year for payment of or on account of interest and principal of debts of said several taxing units, and the sum required for the year for ordinary expenses of government in said several taxing units as the same had been conducted for a number of the next preceeding years, and that if said total sum so composed exceeded $1.50, that difference so appearing would of itself constitute an emergency within the meaning of said act, which said board would have jurisdiction to determine to be an emergency. That such decision was the basis and sole reason for the pretended determination of an emergency, and was but an assumption of a pretended jurisdiction and power without any right whatever in said board to so construe the act. In all other respects the third paragraph is identical with the fourth. In fact it is our judgment that there is no substantial difference in either of the four paragraphs. If the court was in error in sustaining appellees' demur-

rer to the fourth paragraph of appellants' second amended complaint, it was for the same reason in error as to the third, and if on the other hand it was correct in its ruling as to the insufficiency of the fourth paragraph it was, for the same reason, correct as to the third paragraph.

The fourth paragraph charged, that the tax adjustment board held its first meeting on the third Monday in September, 1932, and continued to meet until it fixed the tax rate of the several tax units of Marion county, which was set out in the complaint, and which exceeded $1.50 per $100. The complaint then alleges the passage of the 1932 statute, here under consideration, its various provisions as to state levy and the total tax levy for all municipal purposes. It further charges the preparation and submission of the several budgets and tax levies of the various taxing units, to the county auditor for the year 1932 payable in 1933. Each paragraph of complaint sets out step by step the several things that were done by the local taxing officials which led up to the fixing of the tax levy for the year 1932, payable in 1933. That on the 10th day of October, 1932, it entered the following order:

"BE IT REMEMBERED, That the Board of Tax Adjustment of Marion County met in session on the 10th day of October, 1932, said Board consisting of Walter C. Boetcher, John S. Newhouse, Edward H. Resener, selected by the County Council of Marion County, Ind. Charles A. Grossart, Auditor of Marion County, Indiana, and Albert E. Uhl, Leo K. Fesler and Nicholas H. Noyes, appointed by the Judge of the Marion County Circuit Court, said Board being legally organized and convened and the Auditor of Marion County, having duly certified to the Board the respective tax levies fixed by the proper officers of each municipal corporation in Marion County for the year 1932 and payable in the year 1933 and it appearing that the aggregate of such tax levies including a state tax levy of 15c, except those units as shown by the certification of

the Auditor to be within the $1.50 limit as provided by statute, exceeds for each of such municipalities a total rate of $1.50; and this Board now examines the respective budgets and tax levies for each municipality in said Marion County so certified by said Auditor, and after fully investigating the facts and hearing evidence on each of said levies now finds and determines by a vote of 5 of said Board of 7 members that by reason of the existing various contractual obligations of said municipalities and the fixed charges thereof, and the necessity of maintaining reasonable efficiency in governmental functions for the general public welfare of each of such municipal corporations and by reason of the pressing necessity and the exigency found to exist for revenues and taxes in excess of such total rate of $1.50 for each of such municipal corporations, and also by reason of the passage by the legislature at its special session of 1932 of the statute creating this Board, without further legislation supplying further revenues to make up the deficiency caused by such statute, there has been caused and created, and this Board now expressly determines and declares that an emergency now exists for a total levy in and for each of such municipal corporations including said state tax levy, in excess of said total of $1.50 per each of said corporations upon all of the property in each municipal corporation in Marion County, Indiana, for all municipal corporations for which the property in such respective municipal corporations is taxable, and this Board now fixes and apportions the several respective tax levies for each of such municipal corporations in the amounts which it now determines is necessary to meet such emergency as follows:"

The complaint then charges that the several reasons set out in the above order, nor did all of them constitute an emergency; that in fact no emergency did exist for the fixing of a rate in excess of $1.50 per $100; and that the members of the tax adjustment board knew that no emergency existed that would authorize them to fix a levy in excess of $1.50 per $100. That the five members of the tax board who voted to declare an emergency misconstrued the 1932 statute, and the word

"emergency" and determined that it meant something different than its true meaning, and that such misconception and misconstruction of the meaning of the word "emergency" as used in the statute formed the basis and sole reason for said pretended determination of an emergency; that the board acted outside its jurisdiction, and the levy fixed and determined by the board, insofar as it exceeded $1.50 per $100, was absolutely void and of no force and effect whatsoever.

The complaint also shows on its face that within the time fixed by the 1932 statute and in the manner therein provided, an appeal was taken from the action of the tax adjustment board, to the State Board of Tax Commissioners, and that said state board overruled their petition and approved the action of the board of tax adjustment.

Appellants prayed that the finding of the board of tax adjustment of Marion county, Indiana, in excess of $1.50, including the state tax levy, be declared null and void, and that the proper officers (naming them) be enjoined, etc.

We have not attempted to set out all of appellants' averments contained in their fourth paragraph of complaint, but we think we have stated sufficient allegations that will present the question before us for decision.

It will be noted that appellants' attempt to make a direct attack upon the action of the board of tax adjustment by alleging certain facts which they contend shows constructive fraud. They contend that these facts avoid the order made by the tax adjustment board and, therefore, we should hold their action, insofar as the rate fixed by them exceeds $1.50 per $100, null and void.

We cannot agree with appellants that this action is a direct attack upon the action of the tax adjustment

board, for the reason that neither the *nisi prius* court nor this court has any authority to set aside the orders made by the tax adjustment board. Section 4 of the act here under consideration provides an appeal under conditions therein stated, to the State Board of Tax Commissioners, but nowhere is any provision made for an appeal to the courts. The complaint shows that an appeal, such as is contemplated by the 4th section of the act, was taken to the State Board of Tax Commissioners, and that body refused the prayer of appellants.

We therefore hold that from a consideration of the various provisions of the 1932 statute, and the status of the tax adjustment board and the State Board of Tax Commissioners, there cannot be a direct attack in the courts upon the action of the tax adjustment boards. The only direct attack that can be made upon their action is by an appeal to the State Board of Tax Commissioners, and any attack before a court must necessarily be a collateral attack. If the action of the tax adjustment board is null and void for want of jurisdiction this court should grant relief by way of injunction. It matters not whether the action be considered direct or collateral if the action taken by the tax adjustment board and complained of by appellants be determined void, for even though the action be collateral, it may be attacked in such an action. But we are of the opinion that the action herein of the tax adjustment board is not void on the ground that it exceeded its jurisdiction in determining that an emergency existed. The statute itself authorizes and grants the power or the jurisdiction over this question, and they certainly would not be exceeding their jurisdiction when they considered and decided the very question the legislature has authorized and empowered them to do.

Since we have determined that the present action is

a collateral attack upon the action of the tax adjustment board, notwithstanding appellants' statement that it is a direct attack, the question resolves itself into the identical question presented and decided in the case of *Murray* v. *Zook* (1933), 205 Ind. 669, 187 N. E. 890.

In that case this court pointed out the difference in the statute governing the decision in the case of *State ex rel. Kautz* v. *Board of Commissioners of Howard County* (1933), 204 Ind. 484, 184 N. E. 780, cited and relied upon by appellants and the statute governing this case. The statute of 1932, upon which this action is based, is set out in the opinion of *Murray* v. *Zook, supra,* and we need not set it out in this opinion. Our decision in that case is fully supported by the decisions in other jurisdictions. In the case of *Sterne* v. *City of Spokane et al.* (1910), 60 Wash. 325, 327, 111 Pac. 231, the court had under consideration a similar question. We quote the following excerpts from that opinion:

"While it is alleged that the board acted in fraud of the rights of the competing bidder, it does not follow as a legal proposition from the seemingly arbitarary conduct of the board that a presumption of fraud will arise; so that, however great the wrong may have been to the Moran Engineering Company or to plaintiff, he can have no remedy provided the council and the board of public works acted within the law. The freeholders' charter of the city of Spokane provides; 'Sec. 98. When it shall be decided to do work by contract, they shall advertise at least ten days in two daily newspapers of the city for bids, accompanied by a certified check to an amount to be fixed by the board and named in said advertisement, not exceeding ten per cent. of the estimated cost of the work, reserving the right to reject any and all bids; provided, that in all contracts awarded in which the probable amount of expenditure would exceed $1,000, the publication shall be made for a period not less than twenty days. *If the mayor and city council shall by resolution declare an emergency to exist,* the publica-

tion herein provided for may be dispensed with.' " (Our italics.)

"No constitutional question is involved. That which the Legislature can give it can take away; and, while we agree with counsel for appellant that, if the action of the council in declaring an emergency to exist be upheld, it practically nullifies those provisions of the charter which were designed to insure open competition in the matter of letting contracts for public. works, we must nevertheless hold that it can be no concern of the courts if it does. If the Legislature passes a wholesome law and at the same time creates a weapon to strike it down, it is still within the limits of its constitutional authority, as much so as if it had repealed an existing statute by express enactment. It is so in this case. The charter does not say that time may be dispensed with if an emergency exist, thus leaving the court free to inquire into the fact, but it says that the council shall have the power under any state of facts to declare an emergency. The rule in such cases is stated in *Dillon* v. *Whatcom County,* 12 Wash. 391, 41 Pac. 174, as follows; '. . . While it might appear to the court as a matter of public policy that great evil and inconvenience would result from an injudicious or mean policy on the part of the county commissioners, yet, the discretion having been submitted to them by a vote of the people constituting themselves their agents to do this business for them, reposing confidence in their judgment and integrity, the people must abide by their own action in selecting these agents, and the courts are powerless to relieve them from the results of their own bad judgment in such selections.' This court has so frequently held that legislative discretion in matters falling within the constitutional limit of legislative authority will not be controlled by the courts in the absence of positive fraud that a citation of the authorities through which this principle is threaded will be sufficient without further discussion."

"Then, too, the council has the same right to declare, and, by analogy, its act can be sustained by reference to the power of the Legislature to declare an emergency, and thus put laws in effect before the time they would otherwise become effective under the Constitution. It is not that an

emergency in fact exists, but that the Legislature or other legislative body having the power has said that it is so. When it has, 'the courts will not inquire into it nor entertain any question of its sufficiency.' Sutherland, Stat. Const. §108. This case is to be distinguished from *Green* v. *Okanogan County* (just decided) 111 Pac. 226, wherein we held that no emergency existed which would warrant the board of county commissioners in letting a contract without inviting open competition. The provision of the law there construed (Laws 1903, p. 226, §15) is that all work shall be let to the lowest bidder, 'except in case of emergency'; but no authority is given the board of county commissioners to declare the emergency as a matter of legislative discretion, thus leaving the court free to inquire into the facts; and also from the case of *Goshert* v. *Seattle,* 57 Wash. 645, 107 Pac. 860, where the charter provision was mandatory that the contract should be let to the lowest bidder."

We adhere to our views as expressed in the *Murray* v. *Zook* case, *supra,* and upon authority of that case the judgment should be affirmed.

Judgment affirmed.