[Civ. No. 666. Fourth Appellate District.—November 7, 1933.]

SECURITY–FIRST NATIONAL BANK OF LOS ANGELES, Respondent, v. BOARD OF SUPERVISORS OF RIVERSIDE COUNTY et al., Appellants.

Earl Redwine, District Attorney, George A. French, Deputy District Attorney, and James A. Hall for Appellants.

A. Heber Winder for Respondent.

BARNARD, P. J.—A writ was issued in the trial court for the purpose of reviewing the proceedings and orders of the Board of Supervisors of Riverside County in connection with the organization of the Hemet Irrigation District, which proceedings had been taken under the act of March 31, 1897 (Stats. 1897, p. 254), and the various acts amendatory thereof. After a hearing on the matter an order and judgment were entered annulling the proceedings and orders of the Board of Supervisors on the ground that the board was without jurisdiction to make the orders in question. The defendants named in the petition and an intervener have appealed from the judgment and from an order refusing to vacate the same, and have attempted to appeal from an order denying a new trial.

The main attack upon the judgment is founded upon the contention that under authority of *Halpern* v. *Superior Court*, 190 Cal. 384 [212 Pac. 916], the recitals in the resolutions and orders passed by the board, to the effect that evidence had been received and that certain facts existed, are conclusive. The case referred to involved the orders of a court of general jurisdiction and is not controlling here.

■ An exception to the general rule, that the evidence will not be reviewed on *certiorari*, applies in the case of a board or tribunal of limited jurisdiction where a question is raised as to whether the facts presented to such a board were sufficient to confer jurisdiction. In *Garvin* v. *Chambers*, 195 Cal. 212 [232 Pac. 696], the court said:

"It is a fair summary of the decisions of this state, dealing with the scope of statutory *certiorari*, to say that the evidence adduced upon the hearing before an inferior board or tribunal having limited jurisdiction may be brought up to the reviewing court upon *certiorari* for the sole purpose of determining whether or not, from the evidence before it, the finding of a jurisdictional fact by such inferior board or tribunal is sustainable, and if there be no evidence to sustain such decision it must be annulled."

It is equally well settled that in such a case the inquiry is strictly limited to the facts which were before the board and on which it acted in making its orders. ■ The scheme provided in the Irrigation District Act for the organization of an irrigation district imposes certain judicial functions on a board of supervisors and their proceedings therein are subject to review on *certiorari* (*Imperial Water Co.* v. *Board of Supervisors*, 162 Cal. 14 [120 Pac. 780]).

■ The main question to be here decided is whether the record, as reviewed in the trial court, sustains the finding made to the effect that the board did not have jurisdiction to make the orders attacked.

A return, certified as correct by the county clerk as *ex-officio* clerk of the board of supervisors and custodian of its records, was filed on March 21, 1927. This return shows that at the time set for hearing the petition for organization of this irrigation district oral and written protests were presented, that "after some discussion the matter was referred to the Clerk of this Board and the County Assessor to check over the names on the petition to see if they are

registered voters and property owners, matter continued one week'', and that a bond was presented and approved. On March 28th the matter was continued another week. On April 4, 1927, the board passed a resolution finding the petition sufficient, in which, after reciting that the board had received evidence and had caused the signatures attached to the petition to be examined and compared with the signatures of the electors of the proposed district as shown by the Great Register and with the assessment-roll of the property owners residing within the district, it was resolved that the board ''Find: That the signatures attached to said petition to organize said Hemet Irrigation District are genuine. That the persons who signed said petition to the number of 500 are qualified. That the petitioners include the holders of title or evidence of title to more than 20 per cent in value of the lands included within the proposed district, according to the equalized County Assessment roll of Riverside County, State of California, for the year last preceding.'' It was further found that the petition and the petitioners had fully complied with the requirements of the act therein mentioned and that a copy of the petition with a copy of the notice of presentation had been forwarded to the state engineer. On June 13, 1927, the board passed a resolution reaffirming its previous resolution of April 4th, reciting that a favorable report had been received from the state engineer, that notice of final hearing had been given as provided in the act, and that the board had received and heard all pertinent testimony in connection therewith and had carefully considered all applications for the exclusion of lands from the district. The resolution then proceeded to fix the boundaries of the district and to divide the territory of the district into five divisions.

Under date of September 19, 1927, the minutes of the board recite that the board ''proceeded in the regular way of canvassing the vote which is as follows, to-wit: for the formation of a Hemet Irrigation District 268 votes were cast, against the formation of a Hemet Irrigation District 263 votes were cast''. On the same day a resolution was passed reciting that an election had been duly and regularly held to determine whether the said irrigation district should be organized, that the board had duly and regularly canvassed the returns of said election, and containing an order that

certain described territory was duly and regularly organized as an irrigation district.

While the resolution as passed on April 4, 1927, and as reaffirmed on June 13, 1927, recites that evidence had been received, that the signatures to the petition are genuine, and that "the persons who signed said petition to the number of 500 are qualified", the return discloses no evidence as having been presented to the board in support of these facts. So far as the return itself is concerned, the only indication that any evidence was received is the recital to that effect and the finding made in the resolution passed by the board. While the matter of checking the names with the Great Register and assessment-roll was, on March 21, 1927, referred to the clerk of the board and the county assessor, there is nothing to show that these officials made any report to the board or, if so, what that report was. With reference to the finding of a board on jurisdictional facts the court said in *Garvin* v. *Chambers, supra:*

"But when the board or tribunal in question has power to act only upon the establishment of a certain set of facts which necessarily form the foundation of jurisdiction and, therefore, may be denominated jurisdictional facts and there is no evidence whatever to show the existence of such facts, a finding by such board or tribunal that those facts do exist cannot foreclose inquiry by a court of competent jurisdiction, upon *certiorari,* as to whether or not the order sought to be reviewed is without any evidence to support it or is absolutely contrary to the uncontradicted and unconflicting evidence upon which it purports to rest."

It appears that this matter came on for hearing before the trial court on February 5, 1932, and that after argument the same was submitted. Thereafter and on April 2, 1932, the trial court entered an order reciting that a further return in the matter was necessary and ordering that an amended and/or further return be made which should include the certificate of the clerk of the board setting forth all the testimony, if any, submitted to the board prior to the adoption of its resolution of April 4, 1927, with a similar certificate as to all testimony submitted to the board before the passing of its resolution of June 13, 1927, together with a showing as to all oral testimony taken or received at the hearings before said board relating to said matters includ-

ing any evidence, if any, taken or received as to the genuineness of the signatures to the petition filed or any evidence with reference to the persons whose names were subscribed to the petition. It was further ordered that if no evidence or oral testimony was taken or if taken and no record was preserved, then such fact should be certified in the return with a statement by way of certificate as to what had transpired before the board relating to these matters; and that a certificate should be returned identifying and describing any and all election returns or written documents or copies of returns or election results, if any, submitted to the board at its meeting on September 19, 1927.

In response to this order a certificate was filed by the clerk of the board setting forth that he was personally present and acted as clerk of the board on April 4, 1927; that no evidence and no testimony was given before the board on that date or at any time prior thereto as to the sufficiency or number of valid signatures to the petition for the organization of this district; that at that time and meeting no witnesses were sworn and no affidavits or certificates were filed with reference to the same; that at that time and place the only statement made relative thereto was the unsworn oral statement of the clerk of the board that "there were about five hundred valid signatures to said petition"; that no other statement, oral or otherwise, was then or at any other time made to the board with reference to said matters; and that the board adopted the resolution finding the petition sufficient with only said statement before it. The clerk further certified that at the meeting of June 13, 1927, no evidence, testimony, statements or certificates, oral or written, under oath or otherwise, were received or given. The clerk's certificate further set forth that at the meeting of the supervisors on September 19, 1927, the said clerk removed from each of five unsealed envelopes containing the words "Semi-Official Returns" a copy of the result of the votes cast at the several polling places in the proposed irrigation district; that a true copy of these semi-official returns was set forth in the return theretofore filed; that these semi-official returns constituted the only record or evidence of the return of the election presented to or considered by the board or used by it in canvassing the returns; and that certain packages purporting to be the official returns from this

election, which had never been opened, were still in the possession of the county clerk. This additional return, in the form of a certificate of the clerk of the board was filed on April 6, 1932. On April 15, 1932, an order and judgment were filed annulling the proceedings and orders of the board of supervisors in declaring the Hemet Irrigation District duly organized.

Subsequently the appellants moved to vacate the judgment and for a rehearing, both of which motions were denied. In support of these motions four affidavits were filed. One affiant stated that he was present at the meeting of the board of supervisors when the sufficiency of the petition for the formation of this district was considered; that he does not remember whether or not the clerk of the board testified concerning the same, but he does remember that the attorney for the district was sworn and testified as to the number of acres of land in the district, the number of acres owned by the persons signing the petition, and as to his opinion of the value of the land owned by the persons signing the petition as compared with the value of all of the land in the proposed district. An affidavit by one who had been a member of the board on April 4, 1927, states that on that day the clerk of the board made an oral report "the substance of which gave the board to understand that the petition was all right and had been signed by five hundred persons qualified to sign the same". The affidavit of the then district attorney stated that on April 4, 1927, the clerk of the board "made an oral report and in substance gave the board to understand that the petition was all right and had been signed by five hundred persons qualified to sign the same". The fourth affidavit was by the attorney for the district and recited that he attended the meeting of the board on April 4, 1927, on which occasion the clerk of the board made a report to the board in substance as follows: "I have checked the names of the persons who signed the petition for the formation of the Hemet Irrigation District, with the Great Register of the County of Riverside, and with the Assessment Roll of the County of Riverside and I find that there are more than 500 valid signatures of persons who are qualified to sign same." This affidavit further states that the affiant was sworn as a witness before the board on April 4, 1927, and at that time gave certain testi-

mony which is set forth relating to the acreage in the proposed district and the comparative value of that portion owned by the signers of the petition.

When the matter was submitted to the court the return contained no showing as to any evidence having been before the board when the resolutions of April 4, 1927, and June 13, 1927, were passed, or as sustaining said orders. The return did disclose that certain matters with reference to checking names had been referred by the board to the clerk of the board and to the county assessor and failed to show that any report had ever been made to the board by the two parties to whom this matter had been referred. In this situation the court ordered that a further return be filed setting forth the evidence actually presented to the board of supervisors at its hearing, if any there was, and certifying as to what had transpired at that time. This order was proper under the circumstances (Code Civ. Proc., sec. 1075). The appellants contend that this code section was not complied with in that, after the filing of the supplemental return or certificate of the clerk, the court decided the matter which had theretofore been submitted without a further hearing and without notice to them. While the appellants state in their brief that no further hearing was had or notice given, these facts nowhere appear in the record. The order for judgment entered by the court on April 15, 1932, contains the recital "It appearing to the court that a full return has been made in the above matter and the court having heard all parties and having fully considered the matter and finding that the said Board of Supervisors made its orders herein without jurisdiction". This being an order of a court of general jurisdiction all presumptions are in its favor and, among other things, it must be presumed that section 1075 of the Code of Civil Procedure was fully complied with. So far as the record shows, a further hearing may have been had with all parties present and with notice waived. It is incumbent upon the appellants to show error from the record and none here appears.

It is not necessary here to decide the question raised as to whether, in such a proceeding as this, the return made, including the certificate of the clerk of the board purporting to show all that transpired before the board in connection with the making of the orders in question, may be attacked

by affidavits of other parties present at the meetings of the board with reference to what actually occurred before the board (see *Borchard* v. *Board of Supervisors*, 144 Cal. 10 [77 Pac. 708]). If it be assumed that the affidavits here presented in support of the motions made after judgment do in fact contradict the return made by the clerk of the board and tend to show that any substantial evidence was presented to the board, and if it be further assumed that such contradictory evidence may be considered in such a proceeding as this, the fact remains that no conflicting evidence was before the court when judgment was rendered, with the further fact that these affidavits were presented and considered by the court on the motion to set aside the judgment and on the motion for a new trial and it thus appears that the court has passed upon any possible conflict in the evidence and has resolved the same against the appellants.

■ Assuming that an oral unsworn report of the clerk made to the board of his finding as to the number of qualified signers to the petition would be sufficient, even where the matter had been referred both to the clerk and the county assessor, it could hardly be held that a statement that "there were about five hundred valid signatures" to the petition is sufficient evidence of the facts required under sections 1 and 2 of the Irrigation District Act. In our opinion, the record which was before the trial court for review sustains the finding made to the effect that the board of supervisors was without jurisdiction to make the orders and take the proceedings in question.

Section 9 of the Irrigation District Act provides that the board of supervisors shall canvass the votes cast at the election held to determine whether or not an irrigation district shall be organized and if, upon such canvass, it appears that a majority of the votes cast are "Irrigation District—Yes" the board shall by order declare the territory duly organized as an irrigation district. The respondent points out that in this instance the majority of the votes cast were not in favor of the organization of the district. The return shows that the only evidence before the board upon its canvass of the votes cast at the election consisted of certain returns made and signed by the election officers of the five respective election precincts which had been established for the purpose of this election. Each of these returns sets

forth the total number of votes cast in the particular precinct, followed by a statement of the number of "Irrigation District—Yes" votes and the number of "Irrigation District —No" votes. From these returns it appears that a total of 537 votes were cast, that 268 votes were for "Irrigation District—Yes" and that 263 votes were for "Irrigation District —No". While it thus affirmatively appears from the only evidence before the board that a majority of the votes cast in this election, which was held for the purpose of determining whether the district should be organized, was not in favor of the organization of the district, the matters of canvassing the vote, declaring the result and declaring the district organized are not properly reviewable on a writ of *certiorari* (*Borchard* v. *Board of Supervisors*, 144 Cal. 10 [77 Pac. 708]). However, such a situation illustrates the value of the rule that the board's declaration that it has acquired jurisdiction is not conclusive.

The attempted appeal from the order refusing a new trial is dismissed. The order refusing to vacate the judgment and the judgment are each affirmed.

Marks, J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 5, 1933, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 4, 1934.